190        SUPREME COURT        [Vol.

[State, ex rel. Ward, et al. v. Martin.]

# State, *ex rel.* **Ward,** *et al. v.* **Martin.**

### *Quo Warranto.*

(Decided Feb. 9, 1909.   48 South. 847.)

1. *Municipal Corporations; Annexation of Territory; Elections.*— Where an election is held in territory under section 1073, Code 1907, to determine whether the same shall be annexed to a municipality, and results in the defeat of the proposed annexation, a subsequent election within six months threafter submitting the proposition of annexation of such territory with other territory to another municipality, is void, as in violation of section 1125, Code 1907.

2. *Same.*—Where territory belonging to neither corporation intervenes between the corporations, one municipality cannot be annexed to another under section 1126, Code 1907.

3. *Statute; Construction; Conflicts.*—The court in construing the statutes must avoid, if possible, such a construction as will place statutes in conflict with one another.

APPEAL from Jefferson Circuit Court.

Heard before Hon. A. O. LANE.

Quo warranto by the state of Alabama on the relation of George B. Ward and others, against H. L. Martin, to determine the right of respondent to hold office as an alderman in an alleged ward of the city of Birmingham. From a judgment sustaining demurrer to the information, relator appeals. Reversed and remanded.

J. Q. SMITH, for appellant.—No elections of any kind could be held in the territory if the construction contended for as to section 1073 of the Code of 1907, should be adopted.

R. H. THATCH, and JOHN B. WEAKLEY, for appellee. Counsel discuss the various statutory provisions in reference to holding the election involved in this case and insist that ward 10 is properly incorporated in the city of Birmingham.

McCLELLAN, J.—Quo warranto to determine the right of the appellee to hold office as alderman from the Tenth ward of the city of Birmingham. The existence of such office depends upon whether a territory, called in the record "Mountain Terrace," previously connecting the city of Birmingham with the territorial limits of the municipality of Avondale, became, by an election to expand the corporate limits of the city of Birmingham so as to embrace the Mountain Terrace territory, a part of the city of Birmingham. If not, then the contiguity of the territory comprising the municipality of Avondale and that of the city of Birmingham, essential to permit the consolidation of Avondale with the city of Birmingham, did not exist, and the effort to consolidate Avondale with the city of Birmingham was abortive. Code 1907, § 1126. Whether the Mountain Terrace district came into the city of Birmingham depends upon the effect of sections 1073 and 1125 of the Political Code of 1907.

The question stated arises out of this status of fact: On November 15, 1907, an election was held in the Mountain Terrace district to determine whether that territory, lying between and touching both the city of Birmingham and Avondale, should be annexed to Avondale. The election resulted in the defeat of the proposed annexation to Avondale. On the 20th day of April, 1908, less than six months after the election of November 15, 1907, an election was held submitting the proposition of annexing the Mountain Terrace district, with other territory, to the city of Birmingham. This election resulted in favor of annexation. On the assumption that the Mountain Terrace district had, on April 20, 1908, become a part of the city of Birmingham, an election was held on June 8, 1908, for the submission of the proposition of the consolidation of Avondale with

the city of Birmingham. This election resulted favorably to such consolidation. Sections 1073, Code 1907, is as follows: "Subsequent Elections Not Held Within Six Months.—After an election has been held in any territory under the provisions of this article or any other law, no other or subsequent election shall be ordered or held for the same territory or any part thereof within six months next after said election." Section 1125, Code 1907, appears to be in terms, if not in effect, otherwise a substantial duplicate of section 1073, quoted above.

The whole contention in the premises may be summarized in the question: Must the election, to be within the prohibition of the sections, be for the same purpose, viz., in this instance, for annexation to the same municipality? In taking up the construction of these sections it is rather natural, as a first impression, to conclude that the intention of the legislature was to prohibit the continued vexatious resubmission of the same question to the electorate. This conclusion, however, is dissipated, we think, when the evident purpose of the sections is considered. In terms, in these sections, it is provided that a second election, within six months, "for the same territory or any part thereof," shall not be held. This provision necessarily negatives any intent to leave the legal propriety of the second election dependent upon the same question as regards the territory to be affected. This being true, can it be safely concluded that, notwithstanding the express prohibition against a second election for annexation of any part of the territory involved in the first election, the legislative purpose was to qualify this broad provision to the extent that such second election should be for annexation to the same municipality? That this qualification has not been written in terms in either section is evident. Does the object to be attained by these sections warrant a construction leading to such a qualification?

We see no escape from the conclusion that the purpose in enactment was and is to forbid recurrent (within six months) elections having for their object the alteration of corporate boundaries as affecting a given territory or any part thereof. This purpose would be largely thwarted if the identity of the question submitted, rather than the territory to be affected by the proposed annexation, afforded the sole ground upon which the prohibition of the sections rested. The motive for their enactment was to save the people in the territory, or a part of it, proposed to be annexed, from the vexation of elections, within intervals of six months, held to determine the annexation vel non of that territory, or a part of it, to a municipality. They are statutes of repose. They must be construed to effect, not defeat, that object. It is, of course, not essential to the accomplishment of the purpose stated that the forbidden election should be for annexation to the same municipality. Whether the proposition be for annexation to the same or a different municipality, the natural disturbance wrought by an election is the same. The proper electorate are called, in both instances, to decide whether the territory, or a part of it, shall be annexed to a municipality. It may be true, as argued, that there can be or will be few instances where territory is so situate as to be subject, in reason, to annexation to two municipalities; and it may be true, also, as argued, that unless these statutes are construed as forbidding the submission, in six months, of the same question, annexation to the same municipality, a hostile neighboring municipality, by diligent action in calling elections for annexation of such territory to it, may defeat annexation thereof to a municipality to which the public good requires, and those concerned really desire, its annexation. These are possibilities, of course; but such mere possibilities, the former suggested almost

13—160

wholly by geographical situation, and the latter resting only upon an anticipated proposition of a power conferred, cannot exert serious influence in the interpretation of statutes expressive of the purpose to free the people concerned from the vexation of such elections within intervals of six months, unless the statutes are more equivocal than these appear. And this is especially true when the period required to elapse between the elections is so reasonable in duration as is six months.

We have many statutes inhibiting recurrent elections within stated periods. Some of these relate to elections for county bond issues, for municipal bond issues, for stock districts, for the levy of a special school tax in a county, and for the removal of county seats. In the statutes authorizing elections on propositions for the issuance of municipal or county bonds, the inhibition is qualified to the extent that the proposed issue must be for the same purpose. The inclusion in such statutes of the qualification emphasizes the legislative intent indicated by its omission from the sections 1073 and 1125. All such statutes are suggested by the same care, as is said in *Reed v. State*, 136 Ala. 91, 34 South. 348, to "prevent the people * * * from being harrassed with electtions * * *" oftener than after stated intervals. To entertain the opinion indicated, it is not at all necessary to affirm that section 1073 and 1125 prohibit, within six months, all other elections in the territory or municipality involved in such annexation or consolidation election. True, section 1073 predicates the inhibition upon an election held under that "article or any other law;" but, if the interpretation just recited was adopted, the effect would be to place this statute in conflict with numerous others, for instance, those touching elections for municipal officers. A construction leading to that result must, under familiar rules, be avoided, if possible.

However, the employment of the expression "for the same territory or any part thereof," and the prohibition against the *ordering* of a subsequent election, clearly shows that elections for purposes other than annexation or consolidation were not intended to be forbidden within the interval. Section 1125 confirms this view in the particular that it predicates the prohibition against a second election upon "the provisions of this or any other *similar* law." (Italics ours.)

The result is that the election of April 20, 1908, attempting to annex the Mountain Terrace district to the city of Birmingham, was invalid; and, in consequence, the election of June 8, 1908, attempting to annex Avondale to the city of Birmingham, was also invalid, for the reason that the Mountain Terrace district intervened between Avondale and the city of Birmingham, thus leaving these municipalities without contiguity.

It follows that the demurrer to the information should have been overruled, for the ward assumed to be represented by the respondent and to be composed of the territory embraced in the proposed annexation voted upon April 20, 1908, and in the limits of Avondale at the time of the consolidation election, June 8, 1908, had no legal existence as a part of the city of Birmingham.

The judgment sustaining the demurrer to the information is reversed, and the proceeding is remanded.

Reversed and remanded.

DOWDELL, C. J., and ANDERSON and MAYFIELD, JJ., concur.